UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| AMTRUST CORPORATE MEMBER LIMITED,<br><br>    Plaintiff,<br><br>v.<br><br>PAUL KENDRICK; HEARTS WITH HAITI, INC.; AND MICHAEL GEILENFELD,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO.: _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

NOW COMES Plaintiff AmTrust Corporate Member Limited ("AmTrust"), the lead underwriter subscribing to Certificate No. BA1500992-049 ("Policy"), by and through its undersigned counsel, and files its Complaint for Declaratory Judgment and Other Relief ("Complaint") for the Court's consideration, and in support of its Complaint, would respectfully show the Court as follows:

## JURISDICTION AND VENUE

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, for the purposes of determining an actual controversy between AmTrust and Paul Kendrick ("Kendrick") as to the scope of AmTrust's obligations, if any, to defend and indemnify a lawsuit filed against him by Michael Geilenfeld ("Geilenfeld")[1] and Hearts with Haiti, Inc. ("HHI")[2]

---

[1] Geilenfeld filed claims individually and on behalf of St. Joseph Family of Haiti, a Haitian orphanage. Geilenfeld has alleged that since 2011, Mr. Kendrick has bullied and harassed him by sending hundreds of emails to third parties, contending that Geilenfeld sexually abused boys at the orphanage.

[2] HHI, a nonprofit corporation organized under the laws of the State of North Carolina, raised money for Geilenfeld's Haitian orphanages and charities; it generally asserts that it lost millions of dollars in lost donations.

(collectively, "Underlying Plaintiffs" in the "Underlying Lawsuit").[3]

2. AmTrust is a Private Limited Company organized under the laws of England and Wales with its principal place of business in the United Kingdom.  AmTrust is a citizen of the United Kingdom.

3. Kendrick is an individual residing in the Town of Freeport, County of Cumberland, State of Maine, United States of America.  Kendrick is a citizen of Maine.

4. Geilenfeld is an individual residing at 212 Wesley Drive, Cedar Rapids, Iowa.  Geilenfeld is a citizen of Iowa.[4]

5. HHI is a nonprofit corporation and with its principal place of business in Raleigh, North Carolina.  HHI is a citizen of North Carolina.

6. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332, as AmTrust is completely diverse from the Defendants.  As a result, complete diversity of citizenship exists.  Further, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Venue is proper in the United States District Court for the District of Maine pursuant to 28 U.S.C. § 1391(b) because one or more Defendants reside here and the underlying litigation that is the subject of the action is located here.

8. Underwriters have named Geilenfeld and HHI, the plaintiffs in the Underlying Lawsuit, in this action to ensure complete relief.

9. This action is brought pursuant to 28 U.S.C. §2201 and seeks declaratory relief as to Underwriters' obligations under a policy of insurance issued to Kendrick for the Underlying

---

[3] The Underlying Lawsuit is styled as *Hearts with Haiti, Inc. and Michael Geilenfeld v. Paul Kendrick, State of Maine Cumberland, SS.*, Civil Action No. CV-16-313.
[4] Geilenfeld testified before the Court in April 2016 that this was his home address.  AmTrust intends to seek jurisdictional discovery to confirm Geilenfeld's current place of citizenship to ensure complete diversity.

Lawsuit. Underwriters are uncertain as to their duties, rights, and obligations and files this declaratory judgment action to resolve questions of coverage under the insurance policy, including their duty to defend and/or indemnify Kendrick in the Underlying Lawsuit. An actual and justiciable dispute over those duties, rights and obligations exists between the parties.

## THE FACTS

**I.   THE POLICY**

10.   AmTrust subscribed to Certificate No. BA1500992-049, issued to the Assureds, Paul and Victoria Kendrick ("Policy"). The Policy provided certain property and liability insurance coverage for the personal residence located at 92 Kelsey Ridge Road, Freeport, Maine 04032. The Policy had effective dates of coverage between October 31, 2015 to October 31, 2016, subject to the Policy's terms, conditions, and exclusions. A true and correct copy of the Policy is attached hereto as Exhibit "A".

11.   The Policy contains the following insuring agreement:

**SECTION II – LIABILITY COVERAGES**

**A. COVERAGE E — Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability has been exhausted by payment of a judgment or settlement.

HO 00 05 10 00, p. 16 of 22.

12. Further, the Policy provides that:

**Policy Period**

This Policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

13. The Policy contains the following definitions:

**DEFINITIONS**

2. "Bodily Injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

\*\*\*

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
a. "Bodily Injury"; or
b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

14. The Policy also contains the following exclusions:

**SECTION II – EXCLUSIONS**

**E. Coverage E – Personal Liability and Coverage F – Medical Payments to Others**

Coverages E and F do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily Injury" or "property damage" which is expected or intended by an in "insured" even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

\*\*\*

4

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of … mental abuse…

HO 00 05 10 00, p. 17-18 of 22.

15. The Policy also contains the following conditions:

**SECTION II – CONDITIONS**

A. **Limit Of Liability**

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations.  This limit is the same regardless of the number of "insureds", claims made or persons injured.  All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

\*\*\*

C. **Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us.  You will help us by seeing that these duties are performed:

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

\*\*\*

4. At our request, help us:

   a. To make settlement;

   \*\*\*

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses ….

5

\*\*\*

**H.  Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I.  Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

HO 00 05 10 00, p. 20-21 of 22.

16. The Policy contains an endorsement memorialized as "ADDITIONAL LIABILITY EXCLUSIONS (2010) ENDORSEMENT". In relevant part, that endorsement provides:

It is understood and agreed that:

A.  Coverages (Personal Liability) and Coverage (Medical Payments) do not apply to "bodily injury" or "property damage":

\*\*\*
2.  Arising out of or caused directly or indirectly by an actual or alleged sexual molestation, corporal punishment, physical or mental abuse, assault or battery or any act or omission in respect of the prevention or suppression of such sexual molestation, corporal punishment, physical or mental abuse, assault or battery.

\*\*\*

B.  Coverage – Personal liability does not apply to liability:

1.  Arising from a refusal or failure to employ, promote or fairly compensate any person, or from supervision or failure to supervise, coercion, reassignment, discipline, defamation, harassment, intimidation, creation of a hostile work environment, humiliation or discrimination of any person.

\*\*\*

C.  This insurance shall not apply to fines, penalties, punitive damages,

exemplary or non compensatory damages, or any damages resulting from the multiplication of compensatory damages.

HOMEOWNERS HVHLIAB EXCL 10 12/10.

17. Moreover, due to the fact that the Mr. Kendrick was engaged in litigation with Mr. Geilenfeld and HHI at the time he sought insurance from AmTrust, the parties agreed that AmTrust would only insure Mr. Kendrick subject to the agreement that the Policy would not cover his alleged conduct that was the subject of the ongoing litigation. The Policy therefore contains a manuscript endorsement "(Manuscript Endorsement")", which provides:

**This Endorsement Changes the Policy, Please Read It Carefully**

In consideration of the premium charge, it is understood and agreed by Underwriters that policy BA1500992-049 has been amended as follows effective inception, 10/31/2015:

**Warranted:**

**This policy Excludes all liability for all occurrences or litigation prior to and/or pending at the time of inception.**

All other provisions of this policy apply.

**Dated:** 10/31/15
Attached to and forming part of Certificate No. BA1500992-049
Named Insured: Paul & Victoria Kendrick

## II.   PRIOR FEDERAL COURT LITIGATION BETWEEN GEILENFELD/HHI AND KENDRICK

18. Before the effective dates of the Policy, Mr. Kendrick was sued in federal court by the Underlying Plaintiffs.

19. On February 6, 2013, the Underlying Plaintiffs filed a complaint against Mr. Kendrick in the Federal District Court of Maine alleging claims for defamation, false light invasion of privacy, and tortious interference with advantageous economic relationships ("Federal Action").

20. The Federal Action was assigned Docket No.: 2:13-cv-00039-JAW.

21. The Federal Action was stayed for a period of time that Geilenfeld was imprisoned in a Haitian jail from September 5, 2014 through April 29, 2015, allegedly due to Mr. Kendrick's alleged conduct.

22. Eventually, Geilenfeld was released, and on July 23, 2015, a jury returned a verdict in the Federal Action in favor of Geilenfeld and HHI (the "Federal Judgment"). The jury awarded HHI $7,500,000, consisting of $2,500,000 on the defamation claim and $5,000,000 on the intentional interference claim. The jury awarded Geilenfeld $7,000,000 on the defamation, false light, and intentional interference claims.

23. Following several appeals, the Federal Judgement was reversed and the Federal Action was dismissed due to lack of subject matter diversity jurisdiction in April 2017, after AmTrust's Policy expired. *Hearts With Haiti, Inc. v. Kendrick,* 2017 WL 1531957 (1st Cir. Apr. 27, 2017).

### III. THE UNDERLYING STATE COURT LITIGATION

24. On August 12, 2016, while the Federal Action appeal was still pending, Geilenfeld and HHI filed a nearly identical lawsuit against Mr. Kendrick in the State Court of Maine, Cumberland County, alleging the same claims for defamation, false light invasion of privacy, tortious interference with advantageous relationships, and intentional infliction of emotional distress ("State Court Action"). A true and correct copy of the State Court Action is attached hereto as Exhibit "B".

25. According to the Complaint in the State Court Action, Geilenfeld and HHI filed the new state court lawsuit "to ensure remedy for the torts covered by the federal action in the

event the Second Amended Judgment[5] is not vacated on appeal; and further, this action is brought to redress the post-verdict torts of Paul Kendrick which remain remedied in any action." State Court Action, Exhibit "B" at ¶4.

26.     The State Court Action seeks damages for Mr. Kendrick's alleged tortious conduct that occurred from 2011 through the date of the verdict in the Federal Action, July 23, 2015, which resulted in the Federal Judgment, plus one new allegation that Mr. Kendrick continued the same alleged tortious conduct post-verdict.  *See Generally*, State Court Action, Exhibit "B".

27.     Specifically, the State Court Action identifies only two alleged "post-verdict torts": a harassing letter directed to a character witness who testified for Geilenfeld in the Federal Action, dated September 4, 2015; and a "mass email" disseminated in "March of 2016" to the "police in Cedar Rapids Iowa, and Surrounding Areas" warning that particular community that Geilenfeld "IS WANTED BY HAITI NATIONAL POLICE IN CONNECTION WITH CHILD SEX CRIMES"  State Court Action, Exhibit "B" at ¶¶136 – 137.

28.     Upon information and belief, Vermont Mutual Insurance Group, Mr. Kendrick's homeowner's insurance carrier who defended the Federal Action, is participating in Mr. Kendrick's defense of the State Court Action.

29.     Mr. Kendrick provided notice of the State Court Action to AmTrust and sought coverage, including a defense of the State Court action, under Underwriters' Policy.

30.     Underwriters agreed to  participate in Mr. Kendrick's defense of the State Court Action, subject to a complete reservation of rights via several Reservation of Rights letters. *See* Underwriters' Reservation of Rights letters dated October 28, 2016; November 17, 2016; and

---

[5] The Second Amended Judgment in the State Court Action dismissed the case for lack of subject matter jurisdiction, upon remand from the 1st Circuit.

March 31, 2017.  True and correct copies are attached hereto as composite Exhibit "C".

## COUNT I

### THE UNDERLYING PLAINTIFFS DO NOT ALLEGE "BODILY INJURY" OR "PROPERTY DAMAGE" CAUSED BY AN "OCCURRENCE"

31.   AmTrust incorporates the foregoing paragraphs 1-30, as if fully set forth herein.

32.   Mr. Kendrick seeks a defense and indemnification under the Policy for the allegations brought against him in the State Court Action.

33.   The Policy provides no coverage to Mr. Kendrick because the Underlying Plaintiffs do not allege "bodily injury" or "property damage" caused by an "occurrence" required to trigger the Policy's insuring agreement.

34.   Specifically, Geilenfeld and HHI allege that Mr. Kendrick committed his tortious acts intentionally with the purpose to harm them, including, but not limited to:

a.   Mr. Kendrick made defamatory statements that "were intended to harm the reputations of the Plaintiffs, to denigrate their professional standings and standings in the community, to destroy the Plaintiffs' life's work and mission, and to cause Plaintiff Geilenfeld's wrongful arrest and false imprisonment.  State Court Action, Exhibit "B" at ¶148.

b.   Mr. Kendrick's allegedly defamatory conduct was "motivated by malice or ill will toward Plaintiffs" or that Mr. Kendrick's "deliberate conduct was so outrageous that malice toward the Plaintiffs can be implied." State Court Action, Exhibit "B" at ¶153.

c.   Mr. Kendrick committed the tort of false light invasion of privacy under circumstances which Mr. Kendrick "had knowledge of or acted in reckless disregard as to the falsity of the statements and the false light in which he placed the Plaintiffs."  State Court Action, Exhibit "B" at ¶156.

d.   Mr. Kendrick furthermore committed the tort of false light invasion of privacy under circumstances wherein Mr. Kendrick "was motivated by malice or ill will toward Plaintiffs" or that Mr. Kendrick's "deliberate conduct was so outrageous that malice toward the Plaintiffs can be implied."  State Court Action, Exhibit "B" at ¶158.

e.   Mr. Kendrick tortiously interfered with advantageous relationships under

    circumstances wherein Mr. Kendrick made statements "with knowledge of their falsity or in reckless disregard of their falsity, for the purpose of intimidating, coercing, extorting, or fraudulently inducing Plaintiffs' supporters and would-be supporters to withhold support for Plaintiffs, financial and otherwise." State Court Action Complaint, Exhibit "B" at ¶161.

f.    Mr. Kendrick furthermore committed the tort of interference with advantageous relationships under circumstances wherein Mr. Kendrick "was motivated by malice or ill will toward Plaintiffs" or that Mr. Kendrick's "deliberate conduct was so outrageous that malice toward the Plaintiffs can be implied." State Court Action, Exhibit "B" at ¶164.

g.    Mr. Kendrick's "conduct, acts and omissions, and his communications" – vis-à-vis the Underlying Plaintiffs' infliction of emotional distress claim – "were extreme and outrageous" and/or that Mr. Kendrick "intentionally or recklessly inflicted severe emotional distress on Geilenfeld; or, it was certain or substantially certain that such distress would result from Defendant Kendrick's conduct, acts, omissions, and communications." State Court Action, Exhibit "B" at ¶166.

h.    Mr. Kendrick furthermore committed the tort of infliction of emotional distress under circumstances wherein Mr. Kendrick "was motivated by malice or ill will toward Plaintiffs" or that Mr. Kendrick's "deliberate conduct was so outrageous that malice toward the Plaintiffs can be implied." State Court Action, Exhibit "B" at ¶168; and

i.    Mr. Kendrick's tortious conduct was done with the knowledge that "every such statement . . . [was] false, and every such threat or the fear . . . communicat[ed] [was] based on these false premises." State Court Action, Exhibit "B" at ¶¶87 – 88.

35.    AmTrust therefore owes no duty to defend and/or indemnify Mr. Kendrick for the State Court Action where the Underlying Plaintiffs have not alleged they suffered "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined under the Policy and Maine law.

## COUNT II

## UNDERLYING PLAINTIFFS DO NOT ALLEGE "BODILY INJURY" OCCURRING DURING THE POLICY PERIOD AND/OR SEEK DAMAGES FOR OCCURRENCES OR LITIGATION PRIOR TO AND/OR PENDING AT THE TIME

36. AmTrust incorporates the foregoing paragraphs 1-35, as if fully set forth herein.

37. AmTrust issued the Policy with an express Manuscript Endorsement that states "[t]his Policy Excludes all liability for all occurrences or litigation prior to and/or pending at the time of inception."  The Policy also provides that it only applies to "bodily injury" and "property damage" which occurs during the policy period.

38. At the time the Policy incepted on October 31, 2015, the Federal Judgement had been entered against Mr. Kendrick on July 23, 2015 for the allegations and causes of action contained in the Federal Action.  Mr. Kendrick then appealed the Final Judgment, which was not resolved until the First Circuit Court of Appeals affirmed the dismissal of the Federal Action for lack of subject matter jurisdiction and entered a final judgment on April 27, 2017.

39. Thus, the Federal Action was pending during the entirety of AmTrust's Policy's effect dates.

40. The State Court Action was expressly filed in August 2016 as a placeholder in the event that the reversal of the Federal Judgment and dismissal of the Federal Action was upheld on appeal.  Specifically, the State Court Action advises it was filed to "ensure remedy for the torts covered by the federal action in the event the Second Amended Judgment [the dismissal of the State Court Action for lack of subject matter jurisdiction] is not vacated on appeal."

41. AmTrust therefore owes no duty to defend and/or indemnify Mr. Kendrick for the State Court Action for all liability, conduct, and/or litigation that occurred prior to, was pending at the time the Policy was issued, or for Mr. Kendrick's alleged continued actions following the

Federal Judgment.

## COUNT III

**THE POLICY EXCLUDES MR. KENDRICK'S INTENTIONAL CONDUCT**

42. AmTrust incorporates the foregoing paragraphs 1-41, as if fully set forth herein.

43. AmTrust's Policy further bars coverage for Mr. Kendrick's intentional actions, which are barred by the Policy's exclusion for "expected or intended" acts.

44. As stated above and fully incorporated herein, each and every allegation brought by Geilenfeld and HHI allege that Mr. Kendrick's actions were intentional in that they were committed with full knowledge, deliberation, intent, malice, and ill will to harm them.

45. Moreover, Geilenfeld and HHI contend that Mr. Kendrick continued to commit these acts after a jury had returned a $14.5 million verdict against Mr. Kendrick in the Federal Action for the same exact conduct that is alleged in the State Court Action.

46. Therefore, AmTrust owes no duty to defend or indemnify Mr. Kendrick for the State Court Action as the allegations against him were done as "expected or intended" to harm Geilenfeld and HHI.

## COUNT IV

**THE POLICY EXCLUDES COVERAGE FOR DEFAMATION, MENTAL ABUSE, OR OTHER SIMILAR CONDUCT INTENDED TO HARASS, INTIMIDATE OR HUMILIATE GEILENFELD OR HHI**

47. AmTrust incorporates the foregoing paragraphs 1-46, as if fully set forth herein.

48. The Policy clearly excludes any coverage to Mr. Kendrick for any alleged damages resulting from conduct that constitutes defamation, harassment, intimidation, humiliation, or mental abuse.

49. The gravamen of the State Court Action is that Mr. Kendrick acted intentionally

by committing defamatory, harassing, intimidating, humiliating, and abusive acts to cause Geilenfeld and HHI emotional distress.

50. AmTrust therefore has no duty to defend or indemnify Mr. Kendrick for his conduct that is alleged to be defamatory, harassing, intimidating, humiliating, or to cause mental abuse.

## COUNT V

### THE POLICY EXCLUDES COVERAGE FOR PUNITIVE DAMAGES

51. AmTrust incorporates the foregoing paragraphs 1-50 as if fully set forth herein.

52. AmTrust's Policy expressly excludes coverage for "fines, punitive damages, exemplary or non-compensatory damages, or any damages resulting from the multiplication of compensatory damages."

53. The State Court Action asks that the Underlying Plaintiffs be awarded damages in excess of compensatory damages, including "punitive damages". *See*, State Court Action, Exhibit "B".

54. AmTrust therefore has no duty to defend or indemnify Mr. Kendrick for any type of damages or other relief awarded against him in the State Court Action subject to this exclusion.

## COUNT VI

### AMTRUST'S POLICY PROVIDES NO COVERAGE FOR MR. KENDRICK IN EXCESS OF THE POLICY'S LIMITS

55. AmTrust incorporates the foregoing paragraphs 1-54, as if fully set forth herein.

56. In this case, AmTrust's duty to indemnify Mr. Kendrick extends only up to, and does not exceed, the Policy's limit of liability coverage.

57. The Policy's liability coverage – Coverage E: Personal Liability – is limited to

One Million Dollars ($1,000,000).

58. Furthermore, the Policy's Insuring Agreement provides that AmTrust's obligations under the Policy to settle or defend the State Court Action end "when [its] limit of liability has been exhausted by payment of a judgment or settlement."

59. AmTrust does not opine on the merits of the State Court Action, but because the Federal Judgment well-exceeded $1,000,000, AmTrust contends that there is a possibility, however remote, of a verdict being entered in the State Court that could be in excess of the Policy's limitation on liability coverage.

60. AmTrust therefore avers that it has no obligation to pay any judgment in excess of the Policy's Limits of Insurance.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, AmTrust respectfully prays that Mr. Kendrick, Geilenfeld, and HHI be cited to appear and answer herein and, upon trial, that this Court enter the following declarations:

A) That AmTrust owes no duty to defend or indemnify Mr. Kendrick for the State Court Action because Geilenfeld and HHI do not allege "bodily injury" or "property damage" caused by an "occurrence";

B) That AmTrust owes no duty to defend or indemnify Mr. Kendrick for the State Court Action because there is no "bodily injury" or "property damage" caused by an "occurrence" that took place during the Policy period;

C) That AmTrust owes no duty to defend or indemnify Mr. Kendrick for the State Court Action because Geilenfeld and HHI seek damages for occurrences or litigation that occurred prior to or were pending at the time the Policy incepted;

D) That AmTrust owes no duty to defend or indemnify Mr. Kendrick for the State Court Action because Geilenfeld and HHI allege that Mr. Kendrick committed his tortious acts intentionally, or with malice, expecting or intending to cause Geilenfeld and HHI harm;

E) That AmTrust owes no duty to defend or indemnify Mr. Kendrick for the State

    Court Action because the Policy excludes coverage for defamation, mental abuse, or other similar conduct intended to harass, intimidate, or humiliate Geilenfeld or HHI;

F) That AmTrust owes no duty to indemnify Mr. Kendrick for any potential judgment in the State Court Action for punitive or exemplary damages not covered under the Policy;

G) That AmTrust owes no duty to indemnify Mr. Kendrick for any potential judgment in the State Court Action because that is in excess of the Policy's limits; and

H) That AmTrust may withdraw its participation in the defense of the State Court Action and recover from Mr. Kendrick any monies advanced or paid for attorneys' fees or litigation expenses.

  These declarations are based upon information currently known to AmTrust and are not necessarily the only declarations which may be necessary as discovery proceeds and the case moves towards trial.

  AmTrust further prays that all costs of court be taxed against Defendants, and that AmTrust have all further relief to which AmTrust may show itself to be justly entitled at law or in equity.

  Dated at Portland, Maine, this 23rd day of August 2017.

            /s/ James M. Bowie, Esq.
            James M. Bowie, Esq.

            /s/ Robert C. Hatch, Esq.
            Robert C. Hatch, Esq.

            /s/ Hillary J. Bouchard, Esq.
            Hillary J. Bouchard, Esq.

THOMPSON BOWIE & HATCH LLC
415 Congress Street, 5th Floor
P.O. Box 4630
Portland, ME 04112-4630
(207) 774-2500
jbowie@thompsonbowie.com
rhatch@thompsonbowie.com
hbouchard@thompsonbowie.com